# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**INDUSTRIAL & CRANE SERVICES, INC.**                                        **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO. 1:23-cv-00195-LG-BWR**

**SARENS U.S.A., INC.,**
**ZURICH-AMERICAN INSURANCE COMPANY, and**
**STARR INDEMNITY & LIABILITY COMPANY, and**
**MARKEL CAPITAL LIMITED**                                        **DEFENDANTS**

### ORDER DENYING ICS'S THIRD MOTION TO MODIFY CASE MANAGEMENT ORDER [177] AND SUPPLEMENT [181]

BEFORE THE COURT are two Motions filed by Plaintiff Industrial & Crane Services ("ICS"): ICS's Third Motion to Modify Case Management Order [177] and ICS's Supplement to Third Motion to Modify Case Management Order [181]. Defendant Sarens U.S.A., Inc. ("Sarens") filed a Response [183] and ICS a Reply [189]. ICS requests that it be allowed to designate an expert witness seven months and 26 days late. ICS Mot. [177]. Having considered the parties' submissions, the record, and relevant law, ICS's Motions [177] [181] are denied.

### I. BACKGROUND

Sarens rented eight self-propelled modular transporters ("SPMTs"), two powerpacks to operate the SPMTs, and other accessories (collectively, "the equipment") from ICS. Sec. Am. Compl. [77] at 3. Sarens picked up the equipment from ICS in Pascagoula on about June 8, 2020 and returned it to ICS in Pascagoula about August 13, 2020. *Id.* at 3-4. ICS claims Sarens returned the equipment "heavily damaged" and "unusable." *Id.* at 4. Sarens responds that it made the repairs ICS requested, and ICS's owner, Robert Todd Williams, viewed the equipment and signed

Sarens' report indicating that Sarens completed the repairs. Sarens Answer [91] at 2; Crawford Dep. [189-1] at 134-35. ICS replies that over a period of about three months, while the equipment was at ICS in Pascagoula, Sarens attempted to effect repairs but did not restore the equipment to a usable condition. Sec. Am. Compl. [77] at 4; Crawford Dep. [189-1] at 104.

This discovery dispute concerns videos Sarens produced on January 17, 2024. ICS Mem. [178] at 7. The videos show the equipment being operated by a Sarens' employee at ICS in Pascagoula. *Id.* at 1. ICS moves to designate video forensic expert, Stephen Coker, to testify about the meaning of the videos' metadata to "cast significant doubt on the authenticity of the Sarens videos" and "the credibility of the testimony of both Sarens corporate representatives and its former employee, Michael Crawford." *Id.* at 4-6. Coker's report provides that although the videos' metadata shows a "media created" time of October 9, 2020, that is "NOT necessarily a true capture time." Coker's Report [177-9] at 2, 4. Coker cannot determine the videos' true capture time because metadata was not retained that would identify the true capture time. *Id.* at 2-5. Coker's report stated that "[t]his could be a video that was captured before the event causing the damage, and the person moved the old video to another storage device on 10/9/2020." *Id.* at 5. Coker said that "passing around" the videos "loses the metadata," and "[t]he metadata could have also been altered using any editor." *Id.* at 4-5.

ICS contends that it did not know that Coker's report would be needed until October and December 2024 depositions of Sarens' witnesses revealed Sarens'

2

conflicting positions on when the videos were taken. *Id.* at 7-8. Sarens' corporate designee, Steven Sarens, testified in his October 22, 2024 deposition, that he did not know the exact date that the videos were taken, he estimated they were taken "[e]nd of September, mid October," "[a]fter the repairs were conducted," and showed the equipment "perfectly functioning." Sarens Dep. [177-6] at 3. In his October 23, 2024 deposition, Sarens' corporate designee, Rafael T. Boza, testified that the videos were taken "sometime mid October," and he received them through an iCloud link. Boza Dep. [177-7] at 2.

Crawford, the former Sarens' employee who took the videos with his personal iPhone, responded twice in his deposition that he did not know the date that he took the videos before testifying that he took the videos on November 8, 2020. Crawford Dep. [189-12] at 49, 54, 55, 57. Crawford stated that his memory was refreshed by a November 8, 2020 email shown to him in the deposition. *Id.* at 55. The email was sent by Crawford to Steven Sarens, Boza, and others, and Crawford wrote, "All trailers have pass[ed] the inspection that was performed on ICS yard this morning." Email [177-8] at 1 (sic in original). After seeing the November 8, 2020 email, Crawford testified that the one and only day he was at ICS in Pascagoula was November 8, 2020. Crawford Dep. [189-1] at 55, 57.

When ICS retained Coker and filed the present Third Motion to Modify Case Management Order [177], ICS's counsel believed that ICS's president, Williams, would testify that the videos showed "the condition of ICS's Equipment immediately prior to Sarens renting it in June 2020," which was contrary to Sarens' witnesses'

3

testimony that the videos depicted the equipment after Sarens used it. ICS Mem. [178] at 6. On December 9, 2024, Williams signed an interrogatory response averring that he was "expected to testify that the Sarens 949 video depicts the condition of the ICS SPMTs and Powerpacks shortly before Sarens took them from Pascagoula to Louisiana[.] At no time after Sarens returned the ICS SPMTs and Powerpacks to Pascagoula did they ever appear in the condition as shown in that video." Sarens Ex. [183-1] at 1. A month later, on January 9, 2025, ICS filed a Supplement to its Motion, representing that it erred and Williams will testify that the videos depict the equipment in an unrepaired state "at some point after Sarens returned it to Pascagoula, Mississippi in August 2020." ICS Reply [189] at 4. ICS provided nothing under oath from Williams with its Supplement or Reply averring how Williams will now testify.

Considering the reversal in Williams' proposed testimony, Sarens maintains in its Response that arguing about the exact date the videos were taken is unnecessary because "the issue is simply whether [the videos] were taken after Sarens returned the equipment, which has now been established." Sarens Resp. [183] at 6-7. With its Response, Sarens produced an email that it had not produced before. Email [183-3] at 1. The email shows Crawford sending an iCloud link through email to Steven Sarens and Tom de Boldt on October 10, 2020. *Id.* Sarens represents that the email shows Crawford sent the videos to Steven Sarens and De Boldt on October 10, 2020," which "is the core question posed by [ICS's] present Motion." Sarens Resp. [183] at 5. Sarens observes that Coker's report "says that the metadata taken from

4

the videos shows that they may have been taken in October 2020, again, a date after the equipment had been returned to Plaintiff by Sarens, which simply corroborates what Williams is going to testify to and Sarens' own position as to the videos." *Id.*

ICS does not agree that the question of when the videos were taken is solved by the October 9, 2020 email. ICS Reply [189] at 1. ICS points out that Sarens provided no affidavit or other sworn testimony with the October 10, 2020 email, the email is just an iCloud link with no text referring to ICS, and clicking on the link leads to an error message. *Id.* at 1-2. ICS emphasizes that Crawford testified that he was at ICS in Pascagoula on only one day, and that day was November 8, 2020, nearly one month after the October 10, 2020 email, though ICS acknowledges that Crawford first testified that he did not know the date he took the videos. *Id.* at 2. ICS argues that "ICS should be able to show that the timing of the videos being taken is uncertain (and could even be before October 2020), and buttress its position that the videos show the ICS Equipment in an unrepaired state well before November, or even October, 2020." *Id.* at 4.

## II. DISCUSSION

### A. Standard of Review

District courts have broad discretion in enforcing the deadlines in their scheduling orders. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990). A party must designate experts "at the time and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

5

witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To decide whether to strike a late-designated expert witness, the Court considers "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.,* 361 F.3d 875, 883 (5th Cir. 2004) (quoting *Geiserman,* 893 F.2d at 791).

B. Good Faith Factors

**1. Explanation for delay**

The first factor, explanation for delay, weighs against ICS. ICS filed the present Third Motion to Modify Case Management Order on December 27, 2024, seven months and 26 days after its May 1, 2024 expert designation deadline and three months and fourteen days after Sarens' September 13, 2024 expert designation deadline. Sarens produced the videos on January 17, 2024, and ICS could have obtained Coker's forensic analysis of the videos before its May 1, 2024 expert designation deadline.

ICS says its delay is because Sarens produced the videos in January 2024 without information about who took the videos, when, or what they depicted. ICS Mem. [178] at 1. Then, Sarens was wrong when it represented in July 2024 responses to interrogatories served by Zurich-American Insurance Company ("Zurich"), that "[t]he subject videos and photographs are believed to have been taken in August 2020, shortly after the Plaintiff claimed the equipment was damaged by Sarens." ICS Ex.

[177-2] at 1. At any time after the videos were produced on January 17, 2024, ICS could have propounded interrogatories to Sarens asking for information about who took the videos, when, and what they depicted. ICS has not told the Court whether it did so. "Of course, a party must be candid, responsive, and not 'hide the ball' in discovery. Yet, under the discovery system, in order to receive information, a party typically must ask for it." *Fountain v. Big River Lumber Co. LLC*, No. 5:16-cv-79-KS-MTP, 2018 WL 401539, at *3 (S.D. Miss. Jan. 12, 2018).

By at least July 2024, ICS knew from Sarens' responses to Zurich's discovery, that Sarens believed the videos depicted the equipment after Sarens used it. ICS did not pursue a metadata analysis to attempt to impeach that position until December 12, 2024, after ICS knew Sarens' witnesses' exact testimony about when the videos were taken. ICS pursued a metadata analysis based on wrong information about how its president, Williams, would testify. The fact that Williams signed an interrogatory that is the reverse of how he is now proposed to testify undercuts ICS's complaints about Sarens' discovery shortcomings. Sarens did not produce an October 9, 2020 email that appears to be important until January 23, 2025; and ICS did not know how its own president would testify until around January 9, 2025.

There was a ten-to-twelve-month delay between the December 1, 2023 case management conference and the depositions of Steven Sarens, Boza, and Crawford that ICS attributes to "[t]he scheduling conflicts of various counsel." ICS Mem. [178] at 2. Litigators generally have other cases and commitments. Their pressing schedules are not unforeseen or a routine reason to grant extensions that are opposed.

7

Counsel knew the discovery deadline and assumed risks by waiting until later in the discovery period to conduct depositions. That an opponent "delay[s] the deposition of its representatives . . . is not a satisfactory explanation." *AIG Eur., Ltd. v. Caterpillar, Inc.*, 831 F. App'x 111, 115 (5th Cir. 2020).

### 2. The importance of the testimony

The second factor, the importance of Coker's report, weighs against ICS because Coker does not know why metadata was not retained that would identify the videos' true capture time, and Coker cannot tell when the videos were taken. Coker's Report [177-9] at 2-5. Coker offers scenarios for why metadata revealing a true capture time would not be retained that range from intentional metadata editing to "[p]assing it around loses the metadata." *Id.* at 5. There is evidence that the videos were "passed around" from iPhone to USB cord to computer to iCloud to email. ICS Mem. [178] at 3. But now that Williams too will testify that the videos depict the equipment after Sarens used it, there is no evidence supporting Coker's scenario that "[t]his could be a video that was captured before the event causing the damage, and the person moved the old video to another storage device on 10/9/2020." Coker's Report [177-9] at 5. Allowing Coker to opine that the videos could have been taken before Sarens used the equipment, when there is no evidence that the videos depict the equipment before Sarens used it, invites speculation and confusion untethered to evidence and weighs against Coker's testimony being important.

ICS claims that Coker is still needed, despite Williams' reversed testimony, because ICS's corporate designees testified that the videos were taken "[e]nd of

September, mid October" 2020 and "sometime mid October" 2020, while Crawford testified that he took the videos on November 8, 2020. ICS Reply [189] at 2-4. ICS submits that whether the videos were taken mid-October 2020 or November 8, 2020 matters because "[t]he earlier the videos were created, then the more repairs Sarens performed on the ICS Equipment after they were taken." *Id.* at 3.

ICS has not provided enough information about when and how repairs were conducted to allow the Court to determine whether it is important to know whether the videos were taken in mid-October 2020 or November 8, 2020. If ICS had timely pursued a metadata analysis, then ICS could have questioned Crawford about why his testimony that the videos were taken on November 8, 2020 conflicted with metadata showing a "media created" time of October 9, 2020. ICS took Sarens' corporate designees' depositions before Crawford's but did not ask Crawford why his testimony that the videos were taken on November 8, 2020 conflicted with Sarens' designees' testimony that the videos were taken around mid-October 2020. ICS can cross-examine Sarens' witnesses about the inconsistencies in their testimony without Coker's report. To the extent ICS argues that Sarens cannot authenticate the videos, any authentication problem Sarens may have is not a reason to allow ICS to designate an expert late.

### 3. Potential prejudice in allowing the testimony

Allowing ICS to designate an expert out of sequence and seven months and 26 days late is not harmless. Discovery would need to be reopened to allow Sarens to depose Coker. Coker's inconclusive report will inevitably invite a *Daubert* motion.

9

The deadline for dispositive and *Daubert* motions has passed. The additional delay, disruption to the scheduling order, and expense attached to allowing Coker to be designated late weigh against ICS.

4. **The availability of a continuance to cure prejudice**

ICS and Sarens have been parties since this case was filed on August 10, 2023. At the time ICS filed the present Third Motion to Modify Case Management Order, ICS and Sarens had been allowed over a year of discovery. The initial trial date was November 4, 2024. Trial was continued to January 6, 2025, continued a second time to May 5, 2025, and continued a third time to September 8, 2025. Though "a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time," *Betzel*, 480 F.3d at 709, that remedy is inappropriate here because trial has already been continued thrice, and the other factors weigh against an extension. *See Hamburger,* 361 F.3d at 883-84.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff ICS's Third Motion to Modify Case Management Order [177] and Supplement [181] are **DENIED**.

**SO ORDERED**, this the 27th day of March 2025.

*s/ Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE